# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:21-CR-00060-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | )    **ORDER** |
| JESSIE LEROY GLASS JR, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Motion to Suppress, which the United States opposes. (Doc. No. 43, 47, 56, 59). The Court has reviewed the Motion, the parties' briefs and exhibits, other relevant pleadings of record, and counsel's oral arguments on January 12, 2023, and February 7, 2023.[1] For the reasons discussed below, the Court will deny the Motion.

## I. FACTUAL BACKGROUND

In early 2020, April Glass reported to the Iredell County Sheriff's Office (ICSO) that she saw child pornography on her husband Defendant Jessie Leroy Glass, Jr.'s cell phone. *See* Doc. No. 43-1 at 4. Detective Jason Lowrance initiated an investigation by writing a report and attempting to talk with Ms. Glass, who had moved from North Carolina to Virginia. *See* Doc. No. 55, p. 65. Det. Lowrance had trouble contacting Ms. Glass. He did not speak with her until about a month after he received the tip. *Id*. During that month, Det. Lowrance ran Defendant's name in LINX (Law Enforcement Information Exchange) and discovered that there were "previous

---

[1] The Court held an initial hearing on January 12, 2023, and a *Franks* hearing on February 7, 2023. *See* Doc. Nos. 50, 55.

1

incident[s] in 2012 and 2016," and that Agent Heather Brown with the Virginia State Police had investigated the later incident. *Id*. Det. Lowrance spoke with Agent Brown about the 2016 investigation, and she shared her case file with him. *Id*. at 66-69. Agent Brown revealed that she investigated the Defendant based on a tip from his mother-in-law, Sandra Cox. *See* Doc. No. 55 at 5. Ms. Cox's information came from her daughter, April Glass. Ms. Glass claimed to have found images of child pornography on the Defendant's cell phone, which she took pictures of and texted to her mother. Cox, who lived in Virginia, reported the child pornography to police there, and both she and Ms. Glass talked with Agent Brown. *Id. at* 68. Although Agent Brown found Ms. Glass credible, the alleged crime had not been committed in Virginia. Agent Brown therefore contacted North Carolina authorities to take the case, but they did not pursue it. *Id*. at 20.

Det. Lowrance also contacted the agent who investigated the Defendant in 2012. *See* Doc. No. 55 at 72. Det. Lowrance testified that she told him Defendant had been "charged with some hands-on offenses, I believe, and also some CP." *Id*. at 72. Det. Lowrance sought the police reports from the 2012 incident but failed to obtain them. *Id*. Even so, he learned from an NCIC (National Crime Information Center) report that in 2012, Defendant had been charged with two counts of sodomy of a victim under 13 years old and that one charge had been "nolle pros'd" and the other dismissed. *Id*. at 80, 112-114, 117-118, 143.

Along with the 2012 and 2016 investigations, Det. Lowrance knew that in 2017 the ICSO investigated Defendant based on a tip from Ms. Glass that there was, among other things, child pornography on tablets at his house. *Id*. at 84, 129. Law enforcement obtained a warrant to search the Defendant's tablet. *Id*. Det. Lowrance personally participated in the 2017 investigation by assisting with the warrant affidavit and performing the "dump" or "recover[ing] the data" from the tablet. *Id*. at 84-85. However, law enforcement only located lawful pornography and no child

2

pornography. *Id*. at 129. Thus, the police returned the tablet to Glass and "clos[ed] the case as unfounded." *Id*. at 51.

As part of his investigation, Det. Lowrance ran Ms. Glass's name through CJ Leads, a database that contains North Carolina DMV and criminal history information, and learned that she had a pending misdemeanor larceny charge. *Id*. at 69. Det. Lowrance likewise entered Ms. Glass' name in the ICSO's internal records database and did not find anything. *Id*. at 71, 101-105. He also learned that Ms. Glass had been stopped for another larceny investigation, but he did not check to see if she had been charged. *Id*. at 107.

When Det. Lowrance spoke with Ms. Glass for the first time on January 22, 2020, on the phone, she confirmed that she had seen child pornography on Defendant's phone. *Id*. 65-69. Det. Lowrance further asked Agent Brown to interview Ms. Glass in person in Virginia so that she could "pick up on…body language," and "do follow up questions," and because Agent Brown "had a rapport" with her. *Id*. During this interview, Agent Brown asked Ms. Glass to provide details about the images she had seen on the cell phone. Doc. No 43-1 at 4-5. Ms. Glass claimed to have seen at least 50 images and stated that the Defendant had a Samsung Galaxy S9 cell phone, and two laptops, although one was shared with his father. *Id*. at 5. Agent Brown testified that she found Ms. Glass credible. *Id*. at 21.

Based on his investigation, on February 10, 2020, Det. Lowrance sought a search warrant for the Defendant's residence. Doc. No. 43-1 at 5. His search warrant affidavit stated:

- April Glass filed a report with the ICSO on January 2, 2020, stating she had seen child pornography images on Jessie Glass Jr.'s cell in December 2019.

3

- The report said that Jessie Glass Jr. lived […] in Statesville and that Glass Jr. kept the images in his Google Photos trash bin and included Glass Jr.'s email account and the password.

- April Glass left [the area] around the end of December.

- Det. Lowrance learned that the Defendant had been investigated in Virginia for similar reports in 2012 and 2016.

- On January 22, 2020, Det. Lowrance spoke with April Glass, who said that she was looking through Glass Jr.'s cell phone around the end of December 2019 and she found several images and videos of child pornography depicting juveniles around 10 years old or younger who were nude or were engaged in sex acts.

- Det. Lowrance spoke with Virginia State Police Agent Heather Brown concerning her investigation of Glass Jr. in 2016 for possessing child pornography. Agent Brown agreed to interview April Glass in Virginia.

- On January 28, 2020, Agent Brown spoke with April Glass in person. Glass reiterated that she last saw child pornography images on Glass Jr's phone at the end of December 2019, and Glass provided these descriptions of the images:
  - An image of a child 18 months old or younger. There was a bag over the child's head, and it looked like someone was touching the genital area.
  - Photos of girls and boys described as 10 years-old or younger and the children were made to take their pants down.
  - A photo depicting the completely nude vagina of a prepubescent girl
  - A video of an adult male making a prepubescent female appearing to be 8 or 9 years old put his penis in her vagina. They were on a bed.

4

- o   A photo of an infant child and an adult male forcing his penis in the infant's mouth. They were on a bed.
- o   Several photos of a prepubescent child naked.
- o   A photo of a family. All family members were naked. The children were described as having "barely hit puberty."

*See* Doc. No. 43-1. Law enforcement obtained a search warrant from a North Carolina Superior Court Judge and executed it on February 11, 2020, seizing various electronic devices, including an LG cellphone. *Id*.

The Defendant was not present during the search of his home and therefore law enforcement went to his workplace to speak with him. *See* Doc. No. 43-2. Det. Aponik and Agent Pavlovic contend that the Defendant voluntarily turned over his Samsung cellphone to be searched. *Id*. The Defendant contends that he was not read his *Miranda* rights or informed that there was no search warrant for his cellphone. Det. Lowrance then applied for, and received, a second search warrant to search the Defendant's Samsung cellphone. This search warrant relied on the same probable cause affidavit used to obtain the search warrant for the Defendant's house and information about law enforcement's visit to the Defendant's workplace. *Id*. Ultimately, Forensic Analyst Kelly Matthewman recovered thumbnail and cache drive data allegedly containing child pornography on both the LG cellphone seized from the Defendant's home and a black Samsung cellphone surrendered by him.

On August 17, 2021, a grand jury returned an indictment against the Defendant, charging three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1); and one count of possessing with intent to view child pornography that involved a prepubescent minor and a minor who had not attained 12 years old, in violation of 18 U.S.C. § 2252A(a)(5)(B)

5

and (b)(2). *See* Doc. No. 3. The Defendant has now moved to suppress all evidence seized during the execution of the two search warrants, arguing that his rights were violated under the Fourth Amendment and *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). (Doc. No. 43).

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, safeguards the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures" and requires that no warrant issue "but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend IV; *see also Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 86 Ohio Law Abs. 513 (1961). A search is reasonable if supported by a valid search warrant. For a search warrant to be valid it must be supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 283, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238.

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). But in *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the Supreme Court held that in certain narrowly defined circumstances a defendant may attack a search-warrant affidavit. *See also United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Recognizing a "strong 'presumption of validity with respect to the affidavit supporting the search warrant,'" *Franks* created a rule of "limited scope." *Id*. (quoting *Franks*, 438 U.S. at 171).

6

The *Franks* inquiry involves two separate inquiries, even though they may turn on overlapping facts. Under the first prong — the "intentionality" prong — the defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. Under the second prong — the "materiality" prong — the defendant must show that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id*. at 156. Both prongs must be proven by a preponderance of the evidence. *Id*. If both prongs are met, the search warrant must be voided and the fruits of the search excluded. *Id*.

Along with affirmative false statements, "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Colkley*, 899 F.2d at 301 (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Demonstrating the preponderance of the evidence under an omission theory is a "heavy burden." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (citing *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008)). After all, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016) (quoting *Colkley*, 899 F.2d at 300); *see also Tate*, 524 F.3d at 455 ("[T]he very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information."). After a *Franks* hearing in the omission context, suppression is warranted only if a defendant demonstrates, by a preponderance of the evidence, that (1) the affiant's omissions were made intentionally or recklessly; and (2) the omitted evidence is material. *Haas*, 986 F.3d at 474. "Even if relevant, information is not material unless 'its inclusion in the affidavit would defeat probable cause.'" *United States v. Wharton*, 840 F.3d 163, 168-69 (4th Cir. 2016) (quoting *Colkley*, 899 F.2d at 301).

7

## III. DISCUSSION

### I. <u>Franks Analysis</u>

In his Motion, the Defendant contends that Det. Lowrance intentionally or recklessly omitted material facts from the affidavit and that, had those facts been included, the affidavit would not have supported probable cause. The Defendant focuses his argument on these omissions: (1) the 2012 and 2016 Virginia allegations were dismissed; (2) Ms. Glass was the tipster involved in the 2016 allegation; (3) Ms. Glass again reported the Defendant for similar allegations in 2017 and her tip was considered "unfounded"; (4) Ms. Glass was involved in three pending misdemeanor larceny charges around the time of the affidavits; and (5) the Glasses were having marital problems.[2,3]

*a) Intentionality Prong*

In considering the intentionality prong, the Defendant must show by a preponderance of the evidence that Det. Lowrance omitted information with the intent to mislead the Superior Court Judge or that the information was omitted with reckless disregard of whether it would make the affidavit misleading. *Lull*, 824 F.3d at 115. A showing that he acted negligently, or that the omission was merely an innocent mistake, will not warrant suppression. *See Miller v. Prince*

---

[2] Det. Lowrance admitted to knowing all this information, to some extent, at the time he submitted his affidavits. *See* Doc. No. 55, p. 66, 71, 84, 124, 133, 142.

[3] The Defendant's opening brief also argues that in the search warrant affidavit for the Defendant's cellphone Det. Lowrance omitted "information regarding the number" of officers at Defendant's workplace and falsely stated that Defendant turned over his phone voluntarily. *See* Doc. No. 43-1. This argument was not the focus of either hearing or any of the subsequent briefing, likely because the Defendant has clearly failed to meet his burden under *Franks*. Setting aside the immateriality of these "omissions" and "false statements," there is no evidence that Det. Lowrance intended to mislead the Superior Court Judge. It is clear that Det. Lowrance was not at Defendant's workplace and that he based this portion of the affidavit on a report he received from the law enforcement who were present. Accordingly, Det. Lowrance did not intentionally omit this information or make a false statement. The Court will therefore deny the Motion as to this argument.

8

*George's Cty.*, 475 F.3d 621, 627-28 (4th Cir. 2007) (citing *Franks*, 438 U.S. at 171). An inference of intentionality is also insufficient because of "the potential for endless rounds of *Franks* hearings to contest facially sufficient warrants" and especially "considering 'the level of flagrant police action *Franks* is designed to prevent.'" *Id.* at 301 (affirming district court's denial of a *Franks* hearing based on a claim that affiant omitted purported exculpatory facts because defendant "made no showing and the district court possessed no evidence" of the agent's "requisite intent to mislead.").

To begin with, several of the alleged "omissions" are not omissions at all. The outcomes of the 2012 and 2016 investigations and the Glasses' alleged marital problem were evident from Det. Lowrance's affidavits. These affidavits stated that the Defendant "had been investigated in Virginia for similar reports in 2012 and 2016" and that Ms. Glass lived in a different state from the Defendant. *See* Doc. No. 43-1. These accurate statements convey to a competent reader that the investigations did not result in any charges or convictions and that the Glasses were separated. Although Det. Lowrance could have provided more detailed information, the Defendant is incorrect in arguing that he omitted this information.

As for the actual omissions, the Defendant has failed to make a showing that Det. Lowrance had the requisite intent to mislead. An affiant is not "expected to include in an affidavit every piece of information gathered in the course of an investigation" so the "mere fact" that the officer did not include every piece of information in the affidavits "does not taint [an affidavit's] validity." *Colkley*, 899 F.2d at 300-1 (citations omitted). Rather, Det. Lowrance must have omitted the information to mislead the Superior Court Judge or in reckless disregard of whether it would be misleading. *Tate*, 524 F.3d at 455. An officer acts with reckless disregard when he fails to inform the Judge of facts he *subjectively* knew would negate probable cause. *Miller,* 475 F.3d at 627.

9

The Defendant has offered no evidence to contradict Det. Lowrance's testimony. Det. Lowrance testified that he did not include the information related to Ms. Glass' role in the 2016 investigation, her involvement in pending larceny investigations, and the 2017 investigation because he did not believe it was relevant. *See* Doc. No. 55, p. 81, 85, 86, 118, 124. He denied omitting this information to mislead the Judge. *Id.*[4] The Court finds this testimony credible and, in the absence of any conflicting evidence, the Defendant has failed to meet his burden. Put another way, the Defendant can't beat something with nothing.

The Defendant heavily relies on *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016). But *Lull* is inapt. In *Lull*, law enforcement used an informant to complete a controlled purchase of narcotics from Lull. 824 F.3d at 111. Though the purchase price of the drugs was $180, law enforcement provided the informant with $240. *Id.* at 112. After the drug transaction's close, the informant returned $40 to law enforcement instead of the expected $60. *Id.* Ultimately, law enforcement strip-searched the informant, found the missing $20 fall from the informant's underpants, and arrested him on a felony charge. *Id.* Right after the arrest, the case investigator submitted an affidavit to get a search warrant for Lull's residence, relying in part on the informant's buy, but failed to disclose the informant's misconduct. *Id.* at 112-13. In finding that the investigator was reckless in omitting the relevant information about the informant's credibility, the Fourth Circuit cited four facts established during the *Franks* hearing: (1) the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant; (2) [the affiant's] knowledge of the consequences of the informant's crime; (3) the temporal proximity of the arrest to the

---

[4] The Defendant contends that Det. Lowrance admitted that he excluded the 2017 investigation because it was "unhelpful." *See* Doc. No. 56, p. 7. However, in context, Det. Lowrance's response is more accurately interpreted as him stating that he did not believe it was relevant. *See* Doc. No. 55, p. 132-133.

10

decision to omit the information from the affidavit; and (4) the obvious impact of the informant's misconduct on any assessment of his reliability. *Id.* at 116.

This case differs in significant respects. First, there is no evidence that Ms. Glass lied to law enforcement. The record does not establish that Ms. Glass was untruthful in any of her interactions with law enforcement, including in 2017. Specifically related to the 2017 investigation, Det. Lamberth testified that the term "unfounded" simply means that there was not "any particular evidence that the crime you were investigating at that time occurred." *See* Doc. No. 55, p. 51. In contrast, in *Lull* the informant inarguably lied to law enforcement. *See Lull*, 824 F.3d at 112. Second, *Lull*'s holding partly rested on the informant's dishonesty to the warrant affiant himself, while here there is no evidence that Ms. Glass was anything but honest to the Det. Lowrance about the current investigation. *Id.* Third, despite her alleged dishonesty, Agent Brown found Ms. Glass credible, and Det. Lowrance was unaware of any allegation of dishonesty. *See* Doc. No. 55, p. 21, 83. In *Lull*, the informant was discharged and arrested because of his dishonesty. *Id.* at 116 (accepting "the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant"). Fourth, unlike in *Lull*, Ms. Glass' alleged dishonesty was unrelated to the current investigation. *Id.* And last, Det. Lowrance submitted his affidavits over two-years after Ms. Glass' alleged dishonesty to law enforcement, unlike the investigator in *Lull* who submitted the affidavit on the same day that the informant was terminated and arrested. *Id.* (crediting "the temporal proximity of the arrest to the decision to omit information from the affidavit").

The Defendant also argues that he has satisfied the intentionality prong because an experienced investigator — like Det. Lowrance —would have known that the omitted information was "the kind of thing the judge would wish to know." *United States v. Jacobs*, 986 F.2d 1231,

11

1235 (8th Cir. 1993*)*. However, the Court may not impose a "reasonable officer" standard. *See Haas*, 986 F.3d at 476 (finding a "reasonable officer standard" is "not the test for determining whether an officer has acted recklessly in omitting information from a warrant affidavit"). The Supreme Court has held that "[a]llegations of negligence . . . are insufficient" under *Franks*, 438 U.S. at 171, and the Fourth Circuit considers the affiant's subjective state of mind in assessing this prong. *See Colkley*, 899 F.2d at 301 ("The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination."). The Defendant has presented no evidence that Det. Lowrance subjectively knew that his failure to include this information in the warrant affidavits would mislead the Superior Court Judge. It very well may be true that Det. Lowrance was wrong in his assessment of the relevancy of this information. In fact, the Court finds the information related to the 2017 investigation — that Ms. Glass had reported the Defendant to the Iredell County Sheriff's Office for similar conduct and her tip was deemed "unfounded" — relevant to a probable cause analysis. But Det. Lowrance's honest mistake, even if it were negligent, is simply insufficient to satisfy the intentionality prong.

In sum, the Court finds Det. Lowrance's explanations for the various omissions credible. He was not seeking to mislead the Court or obscure his rationale for omitting the challenged information. Consequently, even if some of the omitted information should have been included in the affidavits, its exclusion was merely negligent. The Defendant has therefore failed to meet his burden on the intentionality prong of the *Franks* test.

b) *Materiality Prong*

Having ruled that Defendant failed to satisfy the first prong of the *Franks* analysis, the Court need not consider whether the purported omissions were also material to the affidavits'

probable cause. Nonetheless, the Court will discuss whether the alleged omissions were "material" under *Franks* to fully explain the Court's analysis. Courts assess whether a defendant has established the materiality prong by considering the "totality of the circumstances," evaluating the affidavit as a whole and all circumstances set forth within. *Colkley*, 899 F.2d at 301-02; *see Gates*, 462 U.S. at 233. This test requires "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit," *id.* at 238, there is probable cause to believe the suspect committed an offense. *See Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964).

The Defendant contends that if the omitted information had been included in the affidavits, it would fatally undermine the credibility of Ms. Glass and thus negate a finding of probable cause. The Court disagrees and finds that none of these omissions — even when viewed together — change the probable cause finding. First, as the Court already noted, the affidavits effectively disclosed that the 2012 and 2016 investigations did not result in any convictions and that the Glasses were living apart. Therefore, the inclusion of that same information, albeit in a more detailed manner, does not materially affect the probable cause finding. Second, the omission of Ms. Glass' role in the 2016 investigation and her involvement in pending larceny investigations do not cast doubt on her credibility. The 2016 investigation ended because Agent Brown could not find any law enforcement in North Carolina, where the alleged crime took place, to take over the case. *See* Doc. No. 55, p. 33-35. The reasons North Carolina law enforcement declined to take the case are unknown but there is no evidence it was because of concerns over Ms. Glass' reliability.[5] Likewise, the pending misdemeanor larceny charge and Ms. Glass' potential involvement in other

---

[5] The Defendant argues that the 2016 investigation calls into doubt Ms. Glass's reliability because no child pornography was found on the SD card she provided to Agent Brown. *See* Doc. No. 56. However, Ms. Glass said that "she did not believe that there was anything" on the SD card. *See* Doc. No. 55, 16, 33. Accordingly, the fact that there was no child pornography on the SD card, if anything, bolsters Ms. Glass' reliability.

13

larceny investigations have no material effect on her reliability. While a conviction for larceny can implicate dishonesty, *see State v. Shelly*, 176 N.C. App. 575, 584, 627 S.E.2d 287, 295 (2006), at the time of the affidavits Ms. Glass was only charged with one unrelated misdemeanor larceny offense. As defense counsel often admonish the Court, a charge is not a conviction.

And lastly, the information related to the 2017 investigation does not lessen Ms. Glass' reliability to the degree necessary to change the probable cause finding. Plainly, the fact that Ms. Glass' 2017 report was determined to be "unfounded" somewhat diminishes her reliability. At the same time, there is no evidence that Ms. Glass was untruthful in 2017. The term "unfounded" merely means that there was no evidence that the alleged crime had taken place. *See* Doc. No. 55, p. 51. Again, this is different from an affirmative finding of untruthfulness. There are many possible reasons that a search might not result in the discovery of evidence (including, for example, that the Defendant had removed the evidence). Thus, the Court will not assume affirmative untruthfulness with no evidence to support that conclusion. In addition, the 2017 investigation must be balanced against factors that support Ms. Glass' reliability. A tipster who meets face-to-face with law enforcement is considered more credible because it allows an officer to observe her demeanor and assess her credibility. *See United States v. DeQuasie*, 373 F.3d 509, 523 (4th Cir. 2004). After having a chance to observe Ms. Glass and hear her allegations firsthand, Agent Brown determined she was credible. *See* Doc. No. 55, p. 21. Ms. Glass' report was also based on her personal knowledge and the information she provided was extremely detailed. Tips that contain an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand," are entitled to greater weight than might otherwise be the case. *Gates*, 462 U.S. at 234. The affidavits state that Ms. Glass recently observed these images firsthand and

14

she provided explicit, detailed, and graphic descriptions. Ms. Glass' foundation for the knowledge and its detailed nature support her reliability.

In sum, the omitted information — specifically the 2017 investigation — does somewhat reduce Ms. Glass' reliability. Even still, when the affidavit is viewed in its entirety, Ms. Glass' reliability is not sufficiently damaged to change the probable cause finding. The Court therefore cannot, by a preponderance of the evidence, find that the omitted information was material.

## II. Analysis under Fourth Amendment

The Defendant also argues, irrespective of the *Franks* analysis, that the two search warrants were not based upon probable cause in violation of the Fourth Amendment. *See* Doc. No. 43. Specifically, he argues that Ms. Glass' tip was unreliable, and the previous investigations did not provide probable cause. *Id*. The United States retorts that there was a substantial basis for the Superior Court Judge to rely on to find that probable cause existed.

The concept of probable cause is not subject to a precise definition. *See United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010). Still, the Supreme Court has explained that probable cause plainly "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test. *See Gates*, 462 U.S. at 230-31; *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). In making a probable cause assessment, a judicial officer must simply make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

A reviewing court will generally give "great deference" to a judge's probable-cause finding. *United States v. Suarez*, 906 F.2d 977, 984 (4th Cir. 1990) (citation omitted).

Here, the search warrants were clearly supported by probable cause. The Court will not repeat its analysis under the *Franks'* materiality prong but rather simply incorporate that analysis here. That said, the Court specifically notes that: (1) Ms. Glass was a known tipster; (2) Ms. Glass met in-person with Agent Brown and spoke with Det. Lowrance over the phone; (3) Ms. Glass' information was based on her firsthand observation; (4) Ms. Glass provided detailed descriptions of the images; and (5) the Defendant was previously investigated for similar incidents. *See* Doc. No. 43-1; Doc. No. 55. Keeping in mind that probable cause is not a high bar and the great deference this Court gives to the Superior Court Judge's determination, the Court finds that Det. Lowrance's affidavits support a finding of probable cause. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States* 134 S. Ct. 1090, 1103 (2018)).

Furthermore, even if the search warrants were lacking in some manner, the good faith exception applies. "Evidence obtained in violation of the Fourth Amendment, of course, is generally subject to suppression under the exclusionary rule." *United States v. Perez*, 393 F.3d 457, 460 (4th Cir. 2004). However, the good faith exception provides that "when the police act with an objectively reasonable good-faith belief" that their conduct is lawful," the costs of suppressing evidence outweigh the benefit of deterring improper police conduct, and the exclusionary rule should not apply. *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). There are, however, four circumstances in which the good faith exception will not apply: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police; (3) when the affidavit supporting the warrant

was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid. *See United States v. Wellman*, 663 F.3d 224, 228-29 (4th Cir. 2011). Here, none of these exclusions apply. As a result, even if the affidavits were insufficient, suppression of evidence would be improper.

**NOW THEREFORE IT IS ORDERED THAT** the Defendant's Motion to Suppress, Doc. No. 43, is **DENIED**.

**SO ORDERED**

Signed: April 6, 2023

Kenneth D. Bell
United States District Judge